COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP2246**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2022CV5010**

**IN COURT OF APPEALS
DISTRICT I**

---

DIVINE PATHWAYS LLC,

PLAINTIFF-APPELLANT,

V.

EDUCATORS CREDIT UNION,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge.  *Reversed and cause remanded for further proceedings*.

Before White, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Divine Pathways LLC ("Divine") appeals from an order of the circuit court granting Educators Credit Union's ("ECU") motion to compel arbitration.  Because the circuit court's order directly conflicts with our decision in *Pruett v. WESTconsin Credit Union*, 2023 WI App 57, 409 Wis. 2d 607, 998 N.W.2d 529, we reverse the circuit court's order and remand the cause for further proceedings.

### BACKGROUND

¶2    Divine opened a checking account with ECU in 2017.  In this class action, Divine claims that from 2017 to 2018, ECU improperly charged Divine overdraft fees on transactions made when Divine had a positive balance and did not overdraw the account.  Divine claims that ECU did this to thousands of other ECU members.  At the time of the transactions, ECU's agreement with Divine did not contain an arbitration clause or any other restriction on Divine's ability to file a class action in court.  The agreement did contain a "Notice of Amendments" clause that permitted ECU to "at any time change the terms of this Agreement[.]"

¶3    On or about April 1, 2020, ECU mailed Divine a notice that changes were being implemented to the membership agreement.  Included with the notice was an amendment to the membership agreement that contained a new arbitration and class action waiver clause ("Arbitration Clause"), and a cover letter ("Cover Letter").  The Arbitration Clause would apply to all claims regardless of "whether they arose in the past, may currently exist, or may arise in the future."  ECU stated in the Cover Letter:

> This new arbitration provision will become effective on April 22, 2020.  You will have until May 1, 2020, to exercise your right to opt out of this provision.  If you do not opt out of this provision, the continued use of your credit union account will act as your consent to this new provision.

> Instructions on how to opt out are included in the new provision provided with this letter.

The instructions on how to opt out said that the member had "the right to opt out of this agreement to arbitrate if you tell us within 30 days of the opening of your account or the mailing of this notice, whichever is sooner." The Arbitration Clause additionally stated that it would apply even if the account was closed.

¶4      In 2022, Divine filed its class action complaint against ECU, and ECU moved to compel Divine's claims into individual arbitration. After briefing and argument, the circuit court granted ECU's motion. In its order, the circuit court:

- Relied on an Ohio Court of Appeals opinion, ***Rudolph v. Wright Patt Credit Union***, 175 N.E.3d 636 (Ohio Ct. App. 2021), to hold that ECU's change-of-terms clause "allows the addition of an arbitration amendment."

- Relied on the majority in a 2-to-1 North Carolina Court of Appeals decision, ***Canteen v. Charlotte Metro Credit Union***, 881 S.E.2d 753 (N.C. Ct. App. 2022), to hold that ECU's change-of-terms provision permitted it to add the Arbitration Clause because doing so was a valid "change" to the forum selection clause in the parties' original contract.

- Relied on ***Canteen*** to construe ECU's "whichever is sooner" opt-out deadline against Divine to hold that Divine's construction was "nonsensical" and that Divine had until the *later* date to opt out yet failed to do so.

3

- Held that ECU's adoption of the Arbitration Clause and its retroactive application to claims already in existence did not violate the duty of good faith and fair dealing.

¶5      Five days after the circuit court granted ECU's motion to compel arbitration, we decided *Pruett*, where we considered the same issues and arguments that the circuit court considered in this case under an arbitration clause virtually identical to the one ECU mailed to Divine. In contrast to the circuit court, we:

- Rejected the reasoning in *Rudolph* and held that the change-of-terms clause did *not* allow the unilateral addition of a new arbitration amendment. *Pruett*, 409 Wis. 2d 607, ¶¶35-39.

- Rejected the majority opinion in *Canteen* to hold that the addition of an arbitration amendment was *not* a "change" to the governing law and forum selection clauses under the change-of-terms provision, adopting the view of the dissent in *Canteen*. *Pruett*, 409 Wis. 2d 607, ¶¶37-43.

- Rejected *Canteen* as misconstruing the "whichever is sooner" opt-out deadline and adopting instead a contrary ruling by the Kansas Court of Appeals in *Duling v. Mid American Credit Union*, 530 P.3d 737, 749-50 (Kan. Ct. App. 2022), that the opt-out deadline could reasonably be understood to be the date near account opening and that failing to opt out under those circumstances did not show assent. *Pruett*, 409 Wis. 2d 607, ¶¶49-53.

- Held that the adoption of a retroactive arbitration and class action waiver clause violated the duty of good faith and fair dealing. *Id.*, ¶¶42-46.

¶6 Two days after *Pruett* was issued, Divine moved the circuit court to reconsider its order granting ECU's motion to compel arbitration in light of *Pruett*. The court set a briefing schedule on the motion, scheduled argument on December 14, 2023, and advised that "[t]he Court intends to issue a ruling on the Motion no later than December 22, 2023." However, Divine believed that both of these dates were after Divine's deadline to appeal from the court's order granting ECU's motion, so on November 30, 2023, Divine filed a timely notice of appeal.[1] The circuit court held a hearing on Divine's motion as scheduled, but it did not issue a decision. On March 12, 2024, having informed the circuit court that the case was fully briefed before this court, Divine withdrew its motion for reconsideration.

## DISCUSSION

¶7 Divine argues that the circuit court erred in granting ECU's motion to compel arbitration. A motion "to compel arbitration involves contract interpretation, which is a question of law that we review de novo." *First Weber Grp., Inc. v. Synergy Real Estate Grp., LLC*, 2015 WI 34, ¶20, 361 Wis. 2d 496, 860 N.W.2d 498.

¶8 "Arbitration agreements are a matter of contract." *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶40, 384 Wis. 2d 669, 920 N.W.2d 767 (cleaned up). As contracts, arbitration

---

[1] Because there is no written notice of entry of final judgment in the record, we question the accuracy of Divine's appeal deadline calculation, but it does not affect our analysis in this case.

agreements "are subject to principles of state contract law to determine whether an agreement to arbitrate has been formed in the first instance and to determine the scope of the arbitration provision as expressed by the language of the agreement." *Pruett*, 409 Wis. 2d 607, ¶18. Although strong federal and Wisconsin policies favor arbitration, the policies are not limitless. *Id.*, ¶19. "[A] party is not required to submit any dispute to arbitration unless it has agreed to do so." *Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27, 39, 586 N.W.2d 41 (Ct. App. 1998). "Arbitrators derive their authority only from the parties' advance agreement that they will submit such grievances to arbitration." *Id.* The circuit court, not the arbitrator, decides whether an agreement to arbitrate has been formed. *Pruett*, 409 Wis. 2d 607, ¶20; *see also Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 300 (2010) (explaining that in cases where the Supreme Court has compelled arbitration, it did so only "after the Court was persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable").

¶9 "The burden to prove that the parties agreed to arbitration rests with the moving party," and the policy favoring arbitration does not apply to disputes over whether the parties made an agreement to arbitrate. *Pruett*, 409 Wis. 2d 607, ¶¶19-20; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("The federal policy is about treating arbitration contracts like all others, not about fostering arbitration."); *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.").

¶10 Divine argues that this case is not meaningfully distinguishable from *Pruett*, and therefore, *Pruett* controls the outcome of this case. ECU, on the other

hand, argues that the facts of this case are significantly different from *Pruett*. We agree with Divine that the facts of this case are materially indistinguishable from *Pruett*, and we are required to follow it in this case. *In re Ct. of Appeals of Wis.*, 82 Wis. 2d 369, 371, 263 N.W.2d 149 (1978) ("The published decision of any one of the panels has binding effect on all panels of the Court.").

¶11    In *Pruett*, we analyzed the defendant credit union's attempt to impose an arbitration and class action waiver clause two ways: (1) as a unilateral change or addition of a new arbitration and class action waiver under the original agreement's change-of-terms clause; and (2) as an unsolicited offer by the credit union to modify the original agreement to add a new arbitration and class action waiver clause. *Id.*, 409 Wis. 2d 607, ¶¶14-17. The circuit court conducted a similar analysis, but it reached the opposite conclusions than we did in *Pruett*.

### I.    The Arbitration Clause is not a change to the governing law and forum selection clauses in the original agreement.

¶12    We begin by discussing arguments based on the change-of-terms provision in the original contract. ECU argues that the change-of-terms provision in the original contract allowed it to add the Arbitration Clause because the Arbitration Clause is a "change" to the governing law and forum selection clauses in the original agreement.[2]

---

[2] On appeal, ECU does not argue that the change-of-terms provision allows the addition of the Arbitration Clause if the Arbitration Clause is construed as an *additional* term rather than a change to an existing term. However, the circuit court concluded that such an addition was authorized by the change-of-terms provision, and Divine directly challenges that conclusion, so we address the issue for the sake of completeness.

¶13      In ***Pruett***, the change-of-terms provision provided: "Except as prohibited by applicable law, we may change the terms of this Agreement. We will notify you of any change in terms, rates, or fees as required by law." ***Id.***, 409 Wis. 2d 607, ¶5. The "Governing Law" provision provided:

> This Agreement is governed by the laws and regulations of the state in which the credit union's main office is located. As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county in which the credit union is located.

***Id.***, ¶38 (cleaned up). The customer argued that the Arbitration Clause was *not* a "change" of the governing law provision in the parties' original contract because which state's laws control a legal action and where a legal action must be brought are distinct from the kind of legal action allowed. We agreed, stating that "the Arbitration Clause does not *change or modify*" the original agreement, but rather

---

In ***Pruett***, we rejected the credit union's argument that the change-of-terms provision gave it contractual authority to unilaterally add the arbitration clause to the agreement. The change-of-terms clause in ***Pruett*** provided: "Except as prohibited by applicable law, we may change the terms of this Agreement. We will notify you of any change in terms, rates, or fees as required by law." ***Id.***, 2023 WI App 57, ¶5, 409 Wis. 2d 607, 998 N.W.2d 529. The customer argued that the language "change the terms of this Agreement" limited the credit union to changing existing terms, and did not authorize the credit union to "add" new terms that were not already "terms of this Agreement." ***Id.***, ¶21. After reviewing case law from across the country, we held that "[b]ased on the persuasive reasoning in the aforementioned cases, and under the standard principles of contract law in Wisconsin, we agree with Pruett that [the credit union's] change-of-terms provision in its Agreement did not authorize it to unilaterally add the Arbitration Clause." ***Id.***, ¶33.

In this case, ECU's change-of-terms clause provided: "Except as prohibited by applicable law, we may at any time change the terms of this Agreement. We will notify you of any changes in terms, rates, or fees as required by law." There is no material difference between the two clauses, but the circuit court reached the opposite conclusion than we reached in ***Pruett***. Additionally, the circuit court based its holding on the Ohio Court of Appeals opinion in ***Rudolph v. Wright Patt Credit Union***, 175 N.E.3d 636 (Ohio Ct. App. 2021), a case that we explicitly considered and rejected in ***Pruett***. ***Pruett***, 409 Wis. 2d 607, ¶¶33, 35. Following ***Pruett***, we conclude that ECU did not have authority under the change-of-terms provision in the original agreement to add the new Arbitration Clause, and the circuit court erred in holding otherwise.

"*adds* substantive limitations to the manner in which a legal action may be heard and the type of claim that can be filed." *Id.*, ¶¶40-41.

¶14 In this case, ECU's change-of-terms clause provided: "Except as prohibited by applicable law, we may at any time change the terms of this Agreement. We will notify you of any changes in terms, rates, or fees as required by law." The governing law and forum selection clauses provide:

> This Agreement is governed by the Credit Union's Bylaws, federal laws and regulations, the laws, including applicable principles of contract law, and regulations of the state in which the Credit Union's main office is located, and local clearinghouse rules, as amended from time to time.
>
> As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county of the Credit Union office where you opened your account. You and we agree to waive any right to trial by jury in any legal proceeding or lawsuit involving the account.

There is no material difference between the ECU clauses and the clauses at issue in *Pruett*, but the circuit court, relying on *Canteen*, reached the opposite conclusion than we reached in *Pruett*, where we expressly disagreed with the majority opinion in *Canteen*. *Pruett*, 409 Wis. 2d 607, ¶¶39, 42. Thus, as in *Pruett*, the Arbitration Clause in this case was not a permissible "change" under the change-of-terms clause; it was an impermissible addition of new terms.

¶15 That the ECU language also contains a jury waiver clause does not change our analysis. Like the forum selection clause, the jury trial waiver was not changed by the Arbitration Clause. The jury trial waiver took away the right to a trial by jury, but did not eliminate the right to bring a class action in open court, under court rules of procedure, before a judge. A customer reading the plain language of the original agreement would not reasonably understand the credit union could unilaterally remove the right to have a judge determine their case.

¶16 Additionally, in *Pruett*, we held that even if the arbitration clause *was* a "change" under the change-of-terms clause, it was an impermissible one because it would violate the duty of good faith and fair dealing to the extent it sought to retroactively affect the customer's rights. *Id.*, ¶46. Although the circuit court in this case concluded that the retroactive Arbitration Clause did not violate the duty of good faith and fair dealing, in *Pruett*, we concluded that the credit union's "addition of the Arbitration Clause appears to have been undertaken to recapture a foregone opportunity and protect [the credit union] retroactively from alleged wrongdoing." *Id.* (cleaned up). We held that using the change-of-terms provision in this way violated the duty of good faith and fair dealing. The same holds true in this case.[3]

## II. ECU did not meet its burden to show that Divine's failure to opt out was assent to the Arbitration Clause constituting a new agreement.

¶17 Having concluded that the change-of-terms provision does not allow ECU to add the Arbitration Clause, either as a new term or a change to an existing term, we turn to ECU's alternative argument that Divine accepted ECU's offer to arbitrate all claims by failing to opt out and continuing to use its account. ECU claims that because Divine did not opt out, the Arbitration Clause is a new agreement between the parties, not a change or addition to the original agreement.

---

[3] ECU argues that it could not have violated the duty of good faith and fair dealing because the Arbitration Clause is a new agreement between the parties, and there is no duty of good faith with respect to contract formation, only contract performance. However, as we explain elsewhere in this opinion, ECU did not meet its burden to show that Divine assented to the Arbitration Clause such that it constitutes a new agreement. Thus, we reject ECU's argument that the duty of good faith and fair dealing did not apply to ECU's implementation of the Arbitration Clause.

¶18    The credit union in *Pruett* made the same "new agreement" argument under a functionally identical opt-out provision. The opt-out provision in *Pruett* provided:

> If you do not agree to be bound by this Arbitration and Class Action Waiver Agreement, you must send us written notice that you want to opt out of this provision of your Account Agreement within 60 days of account opening or within 60 days of receiving this notice, whichever is sooner.

*Id.*, ¶8. The *Pruett* customer had opened his account in 1991, but the notice adding the arbitration clause was sent in 2021. *Id.*, ¶¶5-6. The customer argued that a reasonable person could conclude, based on the plain language chosen by the credit union, that opting out was impossible for the customer because the sooner of the two possible deadlines (i.e., within 60 days of the customer opening the account, which occurred in 1991) had long passed by the time the customer received the notice. *Id.*, ¶50. The credit union argued that such an interpretation would be absurd, but we disagreed. *Id.*, ¶51. Citing favorably to the Kansas Court of Appeals decision in *Duling*, we concluded that a reasonable person could understand the "sooner" date to be the date earlier in time. *Pruett*, 409 Wis. 2d 607, ¶51.

¶19    In this case, ECU's opt-out clause provided:

> You have the right to opt out of this agreement to arbitrate if you tell us within 30 days of the opening of your account or the mailing of this notice, whichever is sooner.... Otherwise, this agreement to arbitrate will apply without limitation, regardless of whether … your account is closed[.]

There is no material difference between the ECU opt-out clause and the opt-out clause in *Pruett*, but the circuit court reached the opposite conclusion than we did in *Pruett*. The circuit court concluded that Divine reasonably should have known that "whichever is sooner" meant that it had 30 days to opt out, not after the 2017

account opening, but after the mailing of the notice, relying on *Canteen* and rejecting *Duling*. However, in *Pruett*, we relied on *Duling* and rejected *Canteen*. *Pruett*, 409 Wis. 2d 607, ¶¶39, 42, 51. In short, the circuit court appeared to construe the "whichever is sooner" language to actually mean "whichever is later," and in doing so, the circuit court's decision conflicts with *Pruett*.

¶20 ECU argues that the Cover Letter that accompanied the Arbitration Clause expressly told Divine that it had until May 1, 2020 (i.e., 30 days after ECU mailed the documents to Divine). ECU claims that, based on all of the information Divine received, Divine reasonably should have understood that May 1, 2020, was the deadline to opt out, and that by not doing so and continuing to use the account, Divine assented to the Arbitration Clause. We disagree. Though the Cover Letter did state that Divine would have until May 1, 2020, to opt out of the Arbitration Clause, it also stated that "Instructions on how to opt out are included in the new provision provided with this letter," and those instructions required the written opt-out notice to be submitted no later than 30 days after account opening or the date on which ECU mailed the Arbitration Clause to Divine, "whichever is sooner." Although it provided a May 1, 2020 deadline, the Cover Letter did not clarify which deadline actually applied because the Cover Letter also referred to the Arbitration Clause that, by its plain terms, set a deadline that had already passed.[4] *See Pruett*, 409 Wis. 2d 607, ¶52.

¶21 As in *Pruett*, this is not a case in which we need to construe an ambiguous provision in a contract to determine the meaning of the words to which

---

[4] We reject ECU's argument that *Pruett* is distinguishable because the plaintiff in that case was an ordinary consumer, whereas here, the plaintiff is a business. ECU claims that Divine failed to exercise reasonable business judgment in determining when it needed to opt out if it wanted to avoid arbitration. We disagree. The plaintiff's degree of business sophistication had no bearing on our decision in *Pruett*.

the parties agreed. *See id.*, ¶53 ("However, we need not consider the proper interpretation of the 'whichever is sooner' language in the opt-out provision."). ECU made a unilateral, unsolicited offer to add a term to the parties' existing contract, and as in *Pruett*, we conclude that Divine's failure to opt out was insufficient to show that Divine assented given the uncertainty and confusion over the offer's deadline. The issue is not what the parties actually meant the deadline to be, but what a person reasonably might have believed the opt-out deadline to be. A reasonable person could have believed that the deadline had passed, so not opting out when it was impossible to timely do so was not unequivocal assent. We explained as much in *Pruett*:

> While the parties to a contract may modify it by a subsequent contract which is shown by their acts, the acts which are relied upon to modify a prior contract must be unequivocal in their character. Acts which are ambiguous in their character, and which are consistent either with the continued existence of the original contract, or with a modification thereof, are not sufficient to establish a modification.
>
> ….
>
> … It is reasonable to believe Pruett may have thought it futile to opt out or that the opt-out provision did not apply to him based on one interpretation of the opt-out provision's language. As Pruett argues, we cannot presume "Pruett assented by not doing something that was impossible, i.e., by not sending in an opt out [notice] when the deadline given to do so was already in the past."

*Id.*, ¶¶47, 53 (quoting *Nelsen v. Farmers Mut. Auto. Ins. Co.*, 4 Wis. 2d 36, 56, 90 N.W.2d 123 (1958) in ¶47).

¶22    For the same reasons, we conclude that Divine's continued use of the account does not show assent. The only way to opt out of the Arbitration Clause was to send written notice to ECU by the appropriate deadline. By its own terms,

13

if Divine had stopped using its account or closed it in an attempt to opt-out, the Arbitration Clause would still have taken effect. This issue too was resolved in *Pruett*. *Id.*, 409 Wis. 2d 607, ¶54 ("[E]ven if Pruett stopped using his account or closed it in an attempt to opt out, his efforts would be unsuccessful. According to the Notice and [the credit union], the only way for Pruett to reject the Arbitration Clause was to opt out in writing, not close the account."). Accordingly, we conclude that Divine did not assent to the Arbitration Clause.[5]

## CONCLUSION

¶23 *Pruett* controls every aspect of this case. Under *Pruett*, the change-of-terms provision in the original agreement did not permit the addition of the Arbitration Clause and the Arbitration Clause was not a change to pre-existing contract terms. Divine did not assent to the Arbitration Clause by not opting out and continuing to use the account. Accordingly, we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Before concluding, we express our disappointment that the circuit court did not issue a decision on Divine's motion for reconsideration at all, let alone before the notice of appeal deadline had passed. Doing so likely would have obviated the need for this appeal and saved valuable judicial and party resources.